IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re ) | CIVIL NO. 12-00513 JMS/BMK |
| ) | |
| MICHAEL DYLAN HENSHAW and ) | ORDER AFFIRMING |
| KIMBERLY HENSHAW, ) | BANKRUPTCY COURT'S |
| ) | AUGUST 23, 2012 JUDGMENT |
| Debtors. ) | VESTING TITLE TO REAL |
| _____ ) | PROPERTY (TMK 3-7-6-007-019, |
| ) | C.P.R. Nos. 0001 AND 0002) IN |
| PHILIP DANIEL HENSHAW and ) | DEBTORS AND DEFENDANTS AS |
| BARBARA WRESSEL HENSHAW, ) | JOINT TENANTS |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | |
| ) | |
| DANE S. FIELD, Trustee of the ) | |
| Bankruptcy Estate of MICHAEL ) | |
| DYLAN HENSHAW and KIMBERLY ) | |
| HENSHAW, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

**ORDER AFFIRMING BANKRUPTCY COURT'S AUGUST 23, 2012 JUDGMENT VESTING TITLE TO REAL PROPERTY (TMK 3-7-6-007-019, C.P.R. Nos. 0001 AND 0002) IN DEBTORS AND DEFENDANTS AS JOINT TENANTS**

## I.  INTRODUCTION

Appellants Philip Dylan Henshaw and Kimberly Henshaw

("Appellants") appeal the "Judgement [sic] Vesting Title to Real Property (TMK 3-

7-6-007-019, C.P.R. Nos. 0001 and 0002) in Debtors and Defendants as Joint

Tenants," which rendered a final decision on the merits in accordance with the bankruptcy court's July 27, 2012 summary judgment determination in favor of Trustee Dane S. Field ("Trustee").  The bankruptcy court determined that Debtors Michael Dylan Henshaw and Kimberly Henshaw ("Debtors") held in joint tenancy with Michael Henshaw's parents, Appellants, real properties known as Units A and B of "The Power Farm" condominium project located at 76-971, Hualalai Road, Kailua-Kona, Hawaii 96740 (the "subject properties").  The bankruptcy court further determined that Debtors' subsequent transfer of their interest in the subject properties to Appellants was fraudulent where they did not receive reasonably equivalent value for the transfer.

Appellants argue that summary judgment was granted in error because, among other reasons, Debtors did not significantly contribute to the purchase of the subject properties such that Appellants were the true equitable owners, and consideration was given for Debtors' transfer of their interest to Appellants.  Based on the following, the court AFFIRMS the bankruptcy court's decision.

///

///

///

2

## II. <u>BACKGROUND</u>

**A.     Factual Background**

Appellants are the parents of the Debtor Michael Dylan Henshaw, who is married to Debtor Kimberly Henshaw.  On or about June 22, 2007, Appellants and Debtors purchased the subject properties for $680,000, with title vested in Appellants and Debtors as joint tenants.  Doc. No. 5-1, Appellants' Appendix ("AA") Ex. 1 at ECF Pages 11-12 of 88 (Deed); Doc. No. 5-2, AA Ex. 6 at ECF Page 40 of 115 (Trustee Concise Statement of Facts ("CSF") ¶ 1);[1] *Id.* at ECF Pages 65-66 of 115 (Philip Henshaw Decl. ¶ 2).

According to Philip Henshaw, although the deed vested title in Appellants and Debtors as joint tenants, he "paid essentially the entire purchase price, providing $595,149.20 by refinancing my home in San Diego and $83,000 from funds obtained from my retirement accounts."  Doc. No. 5-2, AA Ex. 6 at ECF Page 66 of 115 (Philip Henshaw Decl. ¶ 3).[2]  In comparison, Debtors contributed only $6,970.20 towards escrow costs.  *Id.* ¶ 4.  Philip Henshaw

---

[1]  Where the parties did not dispute a particular fact before the bankruptcy court, the court cites directly to the Trustee's CSF.

[2]  The Declaration of Debtor Michael Henshaw recites the same basic assertions as in Philip Henshaw's Declaration.  *See* Doc. No. 5-2, AA Ex. 6 at ECF Pages 69-71 (Michael Henshaw Decl.).  For ease of reference, the court cites above to Philip Henshaw's Declaration only.

explains that Debtors took title as joint tenants "solely for estate planning purposes, not as an indication of equal equitable ownership."  *Id.* ¶ 5.

Philip Henshaw further asserts that the long-term plan was for Debtors to eventually purchase the subject properties from Appellants for the full purchase price.  *Id.* ¶ 6.  In the meantime, however, they agreed that Debtors would pay Appellants $2,300 per month as rent and Philip Henshaw would "take all the tax benefits," including the mortgage interest deduction and depreciation, as well as reporting the income from rents.  *Id.* ¶ 7.  Shortly after the July 2007 purchase, Debtors fell behind in their rent payments.  *Id.* ¶ 8.

On or about December 26, 2007, Appellants and Debtors jointly took out a mortgage on Unit A of the subject properties to secure a revolving line of credit in the amount of $54,000.  Doc. No. 5-2, AA Ex. 6 at ECF Page 41 of 115 (Trustee CSF ¶ 2).

On September 17, 2009, Thomas E. Shockley and Lisa Choquette filed a complaint in the Circuit Court of the Third Circuit of the State of Hawaii, Civ. No. 09-01387K, alleging that Debtors owed them $462,052.67 under a Stock Purchase Agreement, Promissory Note, and Security Agreement, all of which were executed in connection with the Debtor's purchase of the stock of Dive Makai Charters, Inc.  *Id.* ¶ 3.

On or about December 30, 2009, Debtors transferred their interests in the subject properties to Appellants as joint tenants via quitclaim deed. *Id.* ¶ 4. The Quitclaim Deed indicates that no conveyance tax was paid on the transfers. *Id.* ¶ 5. According to Philip Henshaw, he requested this change in record ownership so that he could refinance the mortgage loan on the subject properties, and that he was not aware of Debtors' legal proceeding. Doc. No. 5-2, AA Ex. 6 at ECF Page 66 of 115 (Philip Henshaw Decl. ¶¶ 9-11). Philip Henshaw further asserts that in exchange for the Quitclaim Deed, he agreed to lower Debtors' rent to $1,600 per month and to allow Debtors to pay the back rent ($16,000) at a later date. *Id.* ¶ 13.[3] As of December 30, 2009 (the date of the transfer), the taxed assessed values of Units A and B of the subject properties were $228,700 and $345,300 respectively. Doc. No. 5-2, AA Ex. 6 at ECF Page 41 of 115 (Trustee CSF ¶ 8).

On March 29, 2011, Debtors filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code. *Id.* ¶ 7. Debtors' bankruptcy petition lists their assets as $538,408.51 and liabilities at $1,037,994.18. *Id.* ¶ 9.

---

[3] On December 31, 2009, Debtors and Appellants executed a month-to-month residential tenancy agreement for Debtors to rent the subject properties for $1,600 per month. *See* Doc. No. 5-2, AA Ex. 6 at ECF Pages 90-96 of 115.

**B.      Procedural Background**

On December 13, 2011, Trustee filed a Complaint against Appellants asserting that Debtors' transfer of their joint interest in the subject properties was fraudulent in violation of 11 U.S.C. §§ 544(b) and 548(a)(1), and Hawaii Revised Statutes § 651C-4(a).  The Complaint asks the bankruptcy court to void the transfer from Debtors to Appellants, and to award Trustee, for benefit of the bankruptcy estate, the co-ownership interests transferred.

On May 22, 2012, Trustee filed his Motion for Summary Judgment, asserting that no genuine issue of material fact exists that Debtors and Appellants held the subject properties as joint tenants, and that Debtors fraudulently transferred their interest in the subject properties to Appellants on December 30, 2009.  On July 12, 2012, Appellants filed an Opposition arguing, among other things, that Debtors were not true joint tenants because they did not contribute significantly to the purchase price, and that Debtors received consideration in exchange for transferring the property to Appellants.  On July 20, 2012, Trustee filed a Reply.

At the July 27, 2012 hearing, U.S. Bankruptcy Judge Robert J. Faris explained that Trustee was entitled to summary judgment:

> I'm going to grant the motion for summary
> judgment.  The deed said it was joint tenancy.  That has a

clear legal meaning.  It has to be 50-50.  That's the only legal way you can have a joint tenancy.  There's a rule called the Parol Evidence Rule, which says that when you have an unambiguous legal document you can't admit evidence to contradict what that document clearly says and this document clearly said joint tenancy.  The Hawaii case on point is Midkiff v. Castle & Cooke, 45 Hawaii 409.  So I hold that the property was held as joint tenants and the debtors did have a 50 percent interest in it.

On the question of value, in order to completely stop the avoidance of the transfer you'd have to show that the value given was reasonably equivalent to the value of the 50 percent interest in the property and that's just not the case.  Whether a value was given can't possibly add up to anything near the $260,000 mark for the value of the debtors['] half interest in the property.

It's also not clear that value was given as defined. The purpose of the value requirement is to see whether the debtor's estate was depleted.  In other words, whether the debtor is left off, at the end of the day, with less than the debtor had before to pay creditors.  And I don't think there was value given using that definition.

The unpaid rent as of the date of the transfer apparently wasn't forgiven.  There was just an agreement not to collect on it right now.  That really didn't give any monetary benefit to the other creditors.  The agreement to give a new month-to-month lease at a discounted rent didn't really benefit other creditors either.  So I don't think that reasonably equivalent value was given in this case.

So it's a sad and painful situation, but the law says that this transfer should be set aside.

Doc. No. 5-2, AA Ex. 5 at ECF Pages 16-17 of 115 (July 27, 2012 Hearing

Transcript).

On August 23, 2012, the bankruptcy court entered its Order granting

7

Plaintiff's Motion for Summary Judgment, finding no genuine issue of material

fact that Debtors were joint tenants of the subject properties and that the transfer of

their interest to Appellants was a fraudulent conveyance under 11 U.S.C.

§ 548(a)(1) such that Trustee is entitled to void the transfer.  Doc. No. 6-2, Trustee

Appendix Ex. 8, at ECF Pages 2-4 of 7.  On August 24, 2012, Judgment Vesting

Title to Real Property in Debtors and Defendants and Joint Tenants was entered.

Doc. No. 5-1, AA Ex. 3 at ECF Pages 82-84 of 88.

Appellants filed their notice of appeal on September 6, 2012, and filed

their Opening Brief on November 19, 2012.  Trustee filed an Answering Brief on

December 6, 2012, and Appellants filed their Reply on December 26, 2012.  A

hearing was held on January 15, 2013.

## III.  <u>STANDARD OF REVIEW</u>

The court must review de novo the bankruptcy court's decision on

summary judgment.  *In re Sabban*, 600 F.3d 1219, 1221-22 (9th Cir. 2010); *In re*

*AFI Holding, Inc.*, 525 F.3d 700, 702 (9th Cir. 2008).  "Summary judgment is to be

granted if the pleadings and supporting documents, viewed in the light most

favorable to the non-moving party, show that there is no genuine issue as to a

material fact and the moving party is entitled to judgment as a matter of law."  *In*

*re AFI Holding, Inc.*, 525 F.3d at 702 (citing Fed. R. Civ. P. 56(c)); *In re SNTL*

*Corp.*, 571 F.3d 826, 834 (9th Cir. 2009).

# IV.  DISCUSSION

In relevant part, 11 U.S.C. § 548(a)(1)(B) provides:

> The trustee may avoid any transfer . . . of an interest of
> the debtor in property . . . that was made or incurred on
> or within 2 years before the date of the filing of the
> petition, if the debtor voluntarily or involuntarily --
> . . .
>
> > (B)(i) received less than a reasonably equivalent
> > value in exchange for such transfer or obligation;
> > and
> > (ii)(I) was insolvent on the date that such transfer
> > was made or such obligation was incurred, or
> > became insolvent as a result of such transfer or
> > obligation . . . .

The bankruptcy court determined that Trustee established each of these elements as a matter of law.  Specifically, the bankruptcy court found that (1) Debtors, as joint tenants with Appellants, held a fifty percent interest in the subject properties; (2) Debtors transferred their interest in the subject properties to Appellants within two years of filing for Chapter 7 bankruptcy; (3) Debtors did not receive reasonably equivalent value in exchange for the transfer of their interest to Appellants because any consideration did not constitute "value" as defined by 11 U.S.C. § 548(d)(2); and (4) Debtors were insolvent on the date of their transfer to Appellants.  Doc. No. 6-2, Trustee Appendix Ex. 8, at ECF Pages 2-4 of 7. Appellants argue that genuine issues of material fact exist as to Debtors' interest in

the subject properties as well as the consideration Debtors received for the transfer of their interests to Appellants.[4]  Based on a de novo review, the court finds no genuine issue of material fact as to either of these issues.

## A.     Debtors' Interest in the Subject Properties

The June 22, 2007 Deed provides that Debtors and Appellants are "joint tenants," which under Hawaii law means that they have equal ownership of the subject properties.  *See, e.g.*, *Sawada v. Endo*, 57 Haw. 608, 613, 561 P.2d 1291, 1295 (1977) (explaining that "a joint tenant has a specific, albeit undivided, interest in the property, and if he survives his cotenant he becomes the owner of a larger interest than he had prior to the death of the other joint tenant"); *De Mello v. De Mello*, 24 Haw. 675, 676 (1919) (stating that "possession of one joint tenant, or tenant in common, is the possession of all, and all are equally entitled to the use and enjoyment of the property").

The parties' dispute centers on whether extrinsic evidence is admissible to vary the plain terms of the June 22, 2007 Deed.  Trustee argues that this dispute is governed by *Midkiff v. Castle & Cooke, Inc.*, 45 Haw. 409, 368 P.2d 887 (1962), which adopted the parol evidence rule in construing a deed.  In

---

[4]  Appellants also argue that the bankruptcy court erred in failing to address whether the transfer was a preferential transfer pursuant to 11 U.S.C. § 547(b).  Doc. No. 5, Appellants' Br. at 13.  The court rejects this argument -- Trustee did not bring a claim pursuant to § 547(b) and thus any arguments regarding preferential transfers are irrelevant.

comparison, Appellants argue that the court should follow *Fukunaga v. Fukunaga*, 8 Haw. App. 273, 800 P.2d 618 (1990), which allowed extrinsic evidence as to the joint tenants' true relationship.  Although both these cases are helpful, neither of them answers the question presented in this action -- *i.e.*, whether a joint tenant of a debtor may present evidence to contradict the plain terms of the deed where the bankruptcy trustee seeks the property for the benefit of the bankruptcy estate.

For example, *Midkiff* outlined basic rules of deed interpretation in resolving a deed dispute between the grantor and the successor-in-interest to the grantee.  *Midkiff* explained that a deed should be construed in accordance with the intent of the parties, as determined from the language of the deed and considering all provisions.  *Midkiff*, 45 Haw. at 415, 368 P.2d at 891.  *Midkiff* further explained that where there is no ambiguity in the language used, "the parol evidence rule applies[, and] extrinsic evidence of the surrounding facts and circumstances existing prior to, contemporaneously with and subsequent to the execution of the deed . . . is not competent to contradict, defeat, modify or otherwise vary the meaning or legal effect of the deed."  *Id.* at 421, 368 P.2d at 894 (citations omitted).  Although these basic principles are helpful for general deed interpretation, *Midkiff* does not address any exceptions to the parol evidence rule and its facts are not analogous to this case.

11

Nor is *Fukunaga* directly on point.  *Fukunaga* involved a partition action between two parties (and feuding family members) that were listed on a deed as joint tenants.  *Fukunaga* authorized the defendant to present extrinsic evidence establishing that the plaintiff was included on the deed because he was a surety to help secure a mortgage and that he otherwise had no real interest in the property.  *Fukunaga*, 8 Haw. App. at 275-77, 800 P.2d at 620-21.  In allowing this evidence, *Fukunaga* rejected the plaintiff's argument that the parol evidence rule applied, reasoning that the parol evidence rule "does not operate to exclude evidence as to the true relationship between the parties on one side of a written agreement [because] that relationship is collateral to the written instrument."  *Id.* at 282, 800 P.2d at 623 (quoting *Lee v. Kimura*, 2 Haw. App. 538, 542, 634 P.2d 1043, 1046 (1981)).  Rather, this dispute was "between two of the Grantees," and any agreement between the grantees as to "who are the true owners of the Property and who has a security interest, despite being named a joint tenant in the deed, does not affect the deed at all."  *Id.*

Fukunaga* is certainly helpful in establishing that in interpreting a deed, exceptions to the parol evidence rule exist under appropriate circumstances.  But the court rejects Appellants' argument that *Fukunaga* is directly analogous to this case.  Specifically, Appellants argue that this case is similar to *Fukunaga*

because like *Fukunaga*, this case is essentially between two joint tenants --

Appellants and Trustee, who under bankruptcy law stands in the shoes of the

Debtor.  Doc. No. 5, Appellants' Br. at 5-6.  But in fact, this is not a dispute

between two joint tenants.

   Although Appellants correctly state the general maxim of bankruptcy

law that a trustee stands in the shoes of a debtor, *see In re Maunakea*, 448 B.R.

252, 266 (D. Haw. 2011), the court does not apply such statement literally to the

relationship between Trustee and Debtors.  Rather, when Debtors filed for Chapter

7 bankruptcy, all of their assets became the property of the bankruptcy estate.  *See*

11 U.S.C. § 541(a)(1).  The Chapter 7 trustee then administers that estate, not only

as a representative or "in the shoes" of Debtors, but as both a legal representative

and fiduciary of the estate.  The impartial trustee must act in the best interests of

the creditors *and* the bankruptcy estate, not solely Debtors.  Thus, his "primary job

is to marshal and sell assets, so that those assets can be distributed to the estate's

creditors and then close the estate."  *In re AFI Holding, Inc.*, 530 F.3d 832, 845

(9th Cir. 2008) (citing *In re Joseph*, 208 B.R. 55, 60 (B.A.P. 9th Cir. 1997)).  Thus,

unlike *Fukunaga* where at issue was a collateral agreement between two joint

tenants, Appellants seek to present evidence to change the plain terms of the June

22, 2007 Deed as against Trustee, who was not a party to the June 22, 2007 Deed

or Debtors' subsequent transfer of their interests to Appellants.

Although *Midkiff* and *Fukunaga* do not resolve the parties' dispute, *In re Teranis*, 128 F.3d 469 (7th Cir. 1997), addressed the same basic issue presented before this court. At issue in *In re Teranis* was whether the debtor (Teranis) had an interest in a condominium she held in joint tenancy with her mother (Zarins) such that the bankruptcy trustee had authority to sell the condominium. In opposing the sale, Zarins argued that despite the language of the deed stating that the condominium was held as a joint tenancy, she was the sole owner and that the applicable state law (Wisconsin) allowed her to rebut the presumption of equal ownership. *Id.* at 471-72. Rejecting this argument, *In re Teranis* explained that the cases relied upon by Zarins -- *Jezo v. Jezo*, 127 N.W.2d 246 (Wis. 1964) ("*Jezo I*"), and *Jezo v. Jezo*, 129 N.W.2d 195 (Wis. 1964) ("*Jezo II*") -- "address only the rights *inter sese* of cotenants. They do not deal with the rights of *creditors* of one or more of the cotenants." *Id.* at 472. Rather, *In re Teranis* reasoned that third parties such as creditors and the bankruptcy trustee must be allowed to rely on the plain terms of a deed:

> We agree with the district court that, if *Jezo I* were applied in voluntary bankruptcy cases, "debtors could shield from creditors assets received as gifts because they did not contribute to their acquisition." Memo. Op. at 4. This is exactly what Teranis attempts to do with the condominium. Even though her name is on the deed as

14

owner, Teranis wants to claim that the property is a gift, and, moreover, a future gift, so that it cannot be taken by her creditors.  Despite Zarins' argument to the contrary, it does not matter whether she did or did not intend to give one half of the condominium to Teranis at the signing of the deed or all of it at her, Zarins', death; the fact remains that Teranis' name is on the deed now.

Third parties, be they prospective buyers or creditors, cannot be expected to investigate the possibility of unequal ownership, as *Jezo II* made clear; they can rely upon the face of the deed indicating that each joint tenant has an equal interest in the property. [The bankruptcy trustee] relied on the deed to ascertain Teranis' ownership of the condominium.  The district court did not err in finding that Teranis is a coequal owner of the condominium.

*Id.*; *see also In re Kasparek*, 426 B.R. 332, 343-44 (B.A.P. 10th Cir. 2010) (holding that even if the non-debtor/joint tenant owned the entire equitable interest in the property at issue, the trustee stood in the shoes of a hypothetical bona fide purchaser such that the plain terms of the deed stating that debtor was a joint tenant controlled); *In re Crawford*, 454 B.R. 262, 272 (Bankr. D. Mass. 2011) (rejecting argument that joint tenancy was anything other than equal ownership of real property).

The court finds *In re Teranis* persuasive -- if third parties such as creditors cannot rely on the face of a deed, then any assets held in joint tenancy will require investigation.  It is for this very reason that "creditors are entitled to rely 'on the face of the deed,'" regardless of whatever the equitable interests may

be between the joint tenants.  *See In re Risler*, 443 B.R. 508, 510 (Bankr. W.D.

Wis. 2010) (quoting *In re Teranis*, 128 F.3d at 472).  Indeed, especially in the

bankruptcy context, allowing extrinsic evidence would open the door to collusion

given that joint tenants' interests will often be aligned to shield assets from the

bankruptcy trustee and/or creditors.  The parol evidence rule is designed to prevent

this type of possible fraud -- the "rule discourages interested witnesses to a contract

from committing fraud, perjury, or unintentional invention by making statements

that the contract did not actually represent the agreement of the parties."[5]

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 277 (9th

Cir. 1992); *see, e.g.*, *In re Uni-Rty Corp.*, 191 B.R. 595, 597 (Bankr. S.D.N.Y.

1996) (explaining that the parol evidence rule is "based upon an assumed intention

of the parties, evidenced by an unambiguous written contract, to protect themselves

from the uncertainties of oral testimony, infirmity of the memory and death of

witnesses and to prevent fraud and perjury").

     In further opposition, Appellants argue that the court should follow

---

[5]  The court does not suggest that Appellants and Debtors in this action are misleading the court.  But this case certainly displays the problem created if parol evidence is permitted -- both Appellants and Debtors assert that an oral agreement existed, and Trustee would have no way of rebutting these assertions except for the plain language of the Deed.  Although Appellants argue that their and Debtors' interests are not unified because sale of the subject properties may be used to pay off nondischargeable debts, both clearly assert that Appellants, not Debtors, hold the "real" title to the property.  In fact, Debtor Michael Henshaw (an attorney) argued the appeal on behalf of Appellants at the January 15, 2013 hearing, further demonstrating a unitary interest between Appellants and Debtors.

*Traders Travel International, Inc. v. Howser*, 69 Haw. 609, 753 P.2d 244 (1988), and *In re Lull*, 2011 WL 6941487 (D. Haw. Dec. 30, 2011), which both allowed parties to establish the equitable ownership of a joint bank account and of stock ownership, respectively.  Doc. No. 5, Appellants' Br. at 8-9.  As is apparent from these cases, however, neither of them addresses a joint tenancy of real property created through a recorded deed, and neither of them suggests a different result in this action.  For example, in *Howser*, a creditor sought to garnish a debtor's bank account he held with his wife.  *Howser* adopted the rule "that the debtor presumptively holds the entire joint bank account but may disprove this supposition to establish his or her actual equitable interest."  69 Haw. at 615, 753 P.2d at 248.  Hawaii courts have not applied this same presumption to real property, and courts in other jurisdictions have soundly rejected application of this rule in the context of real property.  *See In re Kasparek*, 426 B.R. at 342 (rejecting application of rebuttable presumption, and instead holding that "a recorded deed that is unambiguous on its face establishes record ownership"); *In re Crawford*, 454 B.R. at 272 ("Kamphaus cites no authority for the proposition that the interests of joint tenants can be unequal, and the Court is aware of none.").

   *In re Lull* is even further afield from the facts of this case.  At issue in *In re Lull* was whether the appellant had an "insider" relationship with the debtor

such that the bankruptcy trustee could recover the debtor's transfers of assets to the appellant.  2011 WL 6941487, at *1.  The bankruptcy court determined that the appellant was an insider because the appellant and his wife jointly owned a 25% interest in the debtor's company.  On appeal, *In re Lull* reversed, finding that the bankruptcy trustee had not established how this interest was held between the appellant and his wife where the agreements were silent on the issue and did not use any terms of art such as "joint tenancy."  *Id.* at *9-10.  In other words, *In re Lull* did not involve interpretation of contract creating a joint tenancy, and is therefore unhelpful in determining the issues presented in this appeal.

In sum, the court finds that the parol evidence rule applies to the June 22, 2007 Deed to prevent admission of extrinsic evidence suggesting that the subject properties were held in anything other than a joint tenancy.  Application of this rule in this action makes common sense -- third parties, including the Trustee, must be able to rely on the terms of a recorded deed.  Further, the caselaw cited by Appellants suggests no exception to the parol evidence rule that would apply under these circumstances.[6]  Although, as the bankruptcy court stated, this may be a "sad

---

[6] Appellants also argue that parol evidence is permissible in light of Hawaii Rule of Evidence 304(c)(1), which provides that clear and convincing proof may rebut the presumption that "the owner of legal title to property is presumed to be the owner of full beneficial title."  Rule 304(c)(1) is a general rule of evidence; it does not undermine *Midkiff* and the parol evidence rule preventing extrinsic evidence to challenge an unambiguous deed.  Indeed, Appellants cite no caselaw applying such rule in this context.

and painful" situation, the court AFFIRMS the bankruptcy court's summary

judgment determination that the June 22, 2007 Deed created a joint tenancy

between Debtors and Appellants such that Debtors were fifty percent owners of the

subject properties.

**B.      Consideration Paid by Debtors for their Interest in the Subject Properties**

The undisputed facts establish that at the time of Debtors' transfer of

their interest to Appellants, the taxed assessed values of Units A and B of the

subject properties were $228,700 and $345,300 respectively.  Doc. No. 5-2, AA

Ex. 6 at ECF Page 41 of 115 (Trustee CSF ¶ 8).  Taking into consideration the

$54,000 mortgage on the subject properties, *see id.* ¶ 2, the net value of the subject

properties to Appellants and Debtors as of December 30, 2009 was $520,000,

meaning that Debtors' interest in the subject properties transferred to Appellants

was worth $260,000.

Appellants argue that Debtors received reasonably equivalent value in

exchange for their interest in the subject properties -- in exchange, Appellants

granted Debtors a new month-to-month rental agreement for the subject properties

at $1,600 per month (as opposed to the $2,300 per month they had previously

agreed to), and agreed to not immediately collect on back rent.[7]  Viewing the facts

in a light most favorable to Appellants, the court disagrees that these benefits to

Debtors come anywhere close to reasonably equivalent value for Debtors' interest

in the subject properties.

"Value" is defined as "property, or satisfaction or securing of a

present or antecedent debt of the debtor, but does not include an unperformed

promise to furnish support to the debtor or to a relative of the debtor."  11 U.S.C.

§ 548(d)(2)(A); *see also In re Roosevelt*, 220 F.3d 1032, 1039 (9th Cir. 2000)

("For the purposes of 11 U.S.C. § 548, 'value' means property.").  Although the

court may determine "value" based on both direct and indirect benefits received,

the value of the benefit must be tangible and quantifiable.  *See In re TriGem Am.*

*Corp.*, 431 B.R. 855, 868 (Bankr. C.D. Cal. 2010) (explaining that once a

bankruptcy trustee "makes a *prima facie* showing that no sufficient direct benefit

was received in the transaction, it is the defendants' burden to prove sufficient

*indirect* benefit that is tangible and concrete"); *In re Richards & Conover Steel,*

*Co.*, 267 B.R. 602, 614 (B.A.P. 8th Cir. 2001) ("The party claiming to have

---

[7]  Appellants also argue that Debtors received value because they had previously agreed to purchase the subject properties by paying Appellants the full purchase price of $680,000.  *See* Doc. No. 7, Appellants' Reply at 7.  This argument runs contrary to the court's determination that Debtors held the subject properties with Appellants as joint tenants, and in any event such oral agreement would violate the Statute of Frauds.

delivered value must quantify it."); *In re TOUSA, Inc.*, 408 B.R. 434, 438 (Bankr. S.D. Fla. 2009) (explaining that value must be "tangible, concrete, and quantified with reasonable precision").

Viewing the facts in a light most favorable to Appellants, any value in what Debtors received -- a decrease in monthly rent and Appellants' agreement not to seek back rent for the time being -- comes nowhere close to "reasonably equivalent value" for their interest in the subject properties worth $260,000.  And Appellants do not even attempt to quantify this consideration, leaving the court to guess as to the possible value Debtors received.  *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) ("When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." (citation and internal quotation signals omitted)).

Indeed, viewing the consideration on its face, the court is at a loss to give it any value.  As to the back rent, Appellants did not forgive Debtors this amount, but merely agreed not to immediately collect.  Doc. No. 5-2, AA Ex. 6 at ECF Page 66 of 115 (Philip Henshaw Decl. ¶ 13).  Further, Appellants' agreement to reduce Debtors' rent was embodied in a month-to-month lease, meaning that

Debtors were assured a lowered rent for at most only two months (the lease calls

for a 45-day cancellation notice).  *See* Doc. No. 5-2, AA Ex. 6 at ECF Pages 90-96

of 115.  Appellants apparently recognize that if Debtors are found to be joint

tenants, this consideration is not reasonably equivalent value -- at the July 27, 2012

hearing before the bankruptcy court, Appellants admitted that this consideration

does not come anywhere close to the $260,000 value of Debtors' interest in the

subject properties.  Doc. No. 5-2, AA Ex. 5 at ECF Page 11 of 115, ("THE

COURT:  -- is there any way the value given gets close to the $260,000 mark?

MR. MICHAEL HENSHAW: Well, probably not, Your Honor.").

       In sum, while Appellants' agreements to lower the monthly rent and

not immediately seek the back rent certainly provided Debtors some comfort and

relief, this relief was wholly amorphous and speculative and therefore did not

constitute "value" as contemplated by 11 U.S.C. § 548(d)(2)(A).  As a result, the

court AFFIRMS the bankruptcy court's summary judgment determination that

Debtors did not receive reasonably equivalent value for the transfer of their interest

in the subject properties.

///

///

///

## V.  <u>CONCLUSION</u>

Based on the above, the court AFFIRMS the bankruptcy court's

Judgement Vesting Title to Real Property (TMK 3-7-6-007-019, C.P.R. Nos. 0001

and 0002) in Debtors and Defendants as Joint Tenants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 22, 2013.



<u>/s/ J. Michael Seabright</u>
J. Michael Seabright
United States District Judge

*Henshaw et al. v. Field*, Civ. No. 12-00513 JMS/BMK, Order Affirming Bankruptcy Court's August 23, 2012 Judgment Vesting Title to Real Property (TMK 3-7-6-007-019, C.P.R. Nos. 0001 and 0002) in Debtors and Defendants as Joint Tenants